

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAR 25 2011

FILED _____
DOCKETED _____
         DATE    INITIAL

**Docket No. 10-73745 and 10-73746**

In the

# UNITED STATES COURT OF APPEALS

for the

## NINTH CIRCUIT

++++++++++++++++++++++++++++++++++++++++++++++++

WAYNE C. EVANS, and )

MADELYN F. EVANS, )

    PETITIONER-APPELLANT )   No. 10-73745 AND 10-73746

Vs. )

COMMISSIONER OF INTERNAL )

REVENUE,   RESPONDENT-APPELLEE)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Appeal from a decision of the United States Tax Court, Phoenix Arizona,

No. 24498-07 and 24510-07

Honorable Mary Ann Cohen, Judge

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# BRIEF OF APPELLANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WAYNE C. EVANS, *PRO SE*

P.O. BOX 925

JEFFERSONVILLE, IN. 47131

520-247-6227

MADELYN F. EVANS, *PRO SE*

P.O. BOX 925

JEFFERSONVILLE, IN. 47131

520-247-6227

# <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure, (FRAP) 26.1, Petitioner-Appellant hereby certifies that they are not a corporation and there is no publicly held corporation that owns any stock.

# STATEMENT OF THE CASE

This case stems from a decision by the Internal Revenue wherein a "Deficiency Notice" against the tax payers (Petitioner's-Appellant's) alleging inter alia fraud and underpayment of taxes. Petitioner's-Appellant's claim incorrect "Deficiency Notice".

That Petitioner-Appellant, Madelyn F. Evans is entitled to "innocent spouse relief".

The Finding of Fact and Opinion of the U.S. Tax Court is appealed to this Court.

## ISSUES PRESENTED

POINT I    (Page 1)

The trial court committed reversible error when she took the Respondents documents in evidence while denying the Petitioners documents which are part of the same cases the Respondents documents came from.  And;

The trial court committed plain error when she ignored the credible explanation by Wayne Evans as to the logical reason that he pled guilty to the criminal charges in case no. CR 99-1267-TUC-FRZ, United States Vs. Wayne C. Evans, "misappropriation of funds from an Indian Tribal organization (Title 18, U.S. Code, sec. 1163", and "filing a false income tax return (Title 26, U.S. Code se 7206 (1)"/ and supportive finding by the trial court of the civil action, Tohono O'Odham Nation (hereinafter referred to as the tribe)  Vs. Wayne Evans, Et al., CV-97-555-TUC-WDB

POINT II    (Page 12)

The trial Court committed reversible error in finding for the Respondent when the Respondent failed to produce witnesses to the computation of any tax and penalty assessed against the Petitioners. While prohibiting the Petitioner to present a profit and loss statement prepared within close proximity to trial by Mr. Hamilton.  Thereby precluding any penalty under section 6663.

POINT III    (Page 21)

The Commissioner failed to prove fraud on the part of the Evans.

POINT IV     (Page 23)

The Tax Court required the Petitioner's both, Mr. and Mrs. Evans to be witnesses against themselves contrary to the Fifth Amendment of the United States Constitution.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................i

STATEMENT OF THE CASE............................................................................ii

ISSUES PRESENTED.....................................................................................iii-iv

TABLE OF CONTENTS..................................................................................v

TABLE OF AUTHORITES ...............................................................................vi

ARGUMENTS.............................................................................................1-25

CONCLUSION.............................................................................................25-27

 CERTIFICATE OF COMPLIANCE.................................................................28

CERTIFICATE OF COMPLIANCE .................................................................29

STATEMENT OF RELATED CASES..............................................................30

CERTIFICATE OF SERVICE............................................................................31

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

Aston v. Comm'r, T.C. Memo. 2003-128...........................................................21

Beaver Vs. Comm'r, 55 T.X. 85, (1970)..........................................................11

Burbank-Glendale-Pasadena Airport Auth. Vs. City of Burbank, 136 F.3d 1360

          (9th Cir. 1998)...........................................................................2

Herbrank Vs. Commissioner, 81 T.C. 640 (1983).............................................21

Jespeson v. Harrah's Operating Company, 444 F.3d 1104 (9th Cir. 2005)........................2

Kemp Vs. Comm'r T.C. Memo. 204-153,.........................................................11

Paccar Vs. Comm'r, 849 F.2d 393, (9th Cir. 1979).............................................12

Parks v. Comm'r, 94 T.C. 654 (1990)...........................................................14

Recklitis Vs. Comm'r, 91 T.C. 874 (1988).....................................................14

Reum's Pasta Bella, LLC Vs. Visa USA, Inc., 442 F.3d 741 fn 6 (9th Cir. 2006).............2

Southern Arizona Water Rights Settlement Act..................................................4

Internal Revenue Code (I.R.C.) § 7454 (a)....................................................13

Title 18, U.S. Code § 1163...................................................................1,2,6

Title 26, U.S. Code § 7206(1)................................................................8,22

Tax Court (T.C.) Rule 142 (b)................................................................13

U.S. Constitution, Article VI................................................................16

Section 6663.................................................................................22

## POINT I

<u>The trial court committed reversible error when she took the Respondents documents in evidence while denying the Petitioners documents which are part of the same cases the Respondents documents came from.  AND;</u>

<u>The trial court committed plain error when she ignored the credible explanation by Wayne Evans as to the logical reason that he plead guilty to the criminal charges in case no. CR 99-1267-TUC-FRZ, *United States Vs. Wayne C. Evans*, "misappropriation of funds from an Indian Tribal organization (Title 18, U.S. Code, § 1163", and "filing a false income tax return (Title 26, U.S. Code § 7206 (1)"; and supportive finding by the trial court of the civil action, *Tohono O'Dham Nation ( hereinafter referred to as the tribe) Vs. Wayne Evans, Et al.,* CV-97-555- TUC- WDB</u>

<u>A</u>

### **"Misappropriation of funds from an Indian Tribal organization (Title 18, U.S. Code, § 1163)"**

The trial court based the "Finding of Fact and Opinion"  with great difference to the results of the previous two cases in the Federal Courts as set out above to find inter alia, fraud in the instant case.

Judge Cohen devoted five (5) pages of her Finding of Fact and Opinion consisting of a total of 21 pages. Almost twenty-five percent (25 %) of the total document restating what was done in such cases by each of those trial courts.

The travesty of such finding by Judge Cohen is that she relied on only part of the records of such cases. The respondent only provided the documents from such cases that were reinforcing her arguments.

THIS COURT IS REQUESTED TO TAKE JUDICIAL NOTICE[1] of the documents provided in the appendix of this document that reflect the complete cases. See Appendix Exhibit 1 54 pages of the Sentencing hearing in case CR-99-1267-TUC-FRZ. (See **Reum's Pasta Bella. LLC v. Visa USA, Inc.**, **442F.3d 741 at 746 fn 6 (9th Cir. 2006)** citing **Burbank-Glendale-Pasadena Airport Auth. V. City of Burbank**, **136 F.3d 1360, 1364 (9th Cir. 1998)**

First: CR 99-1267-TUC-FRZ, United States Vs. Wayne C. Evans, "misappropriation of funds from an Indian Tribal organization (Title 18, U.S. Code, § 1163"

Without re-litigating the case we provide the following:

---

[1] See **Jesperson v. Hararh's Operating Company**, **444 F.3d 1104, at 1110 (9th Cir. 2005)** "Judicial notice is reserved for matters generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questioned." Fed. R. Evid. 201.

2

Defense counsel had a responsibility to advise the trial court that Mr. Evans should not plead guilty, or that he was pleading guilty against the advice of counsel.

The entire thrust of the Governments case is based upon an alleged "conflict of interest" alleging that Wayne Evans concealed from the tribe that he had an interest in Huntington Construction, Inc. That government claim that the tribe had no knowledge that Wayne Evans, as manager, also had an interest in Huntington Construction, Inc. and failure to do so was a federal crime is far from the facts of the case.

What the facts and documents presented to the court by the prosecution did not fully disclose was that for several years Wayne Evans had been involved with the tribe doing construction type work on the reservation lands. Under the name of Huntington Construction, Inc.

The trial court could not make a positive determination as to what amount of restitution was required to be paid to the tribe by Evans as a result of the plea agreement. See Appendix Exhibit 1, page 14, Line 10-25.

**History of events leading up to the hiring of Evans as manager of the Nations' farm operations.**

In 1982 Congress enacted the Southern Arizona Water Rights Settlement Act. The Nation was entitled to receive funds from that act, and was eligible. The Nation was to receive 23.4 million dollars grant and another 7.5 million dollars in non-reimbursable loans to construct the Shuck Toak farm for the nation.

The mandated date for the project to be completed was 1992. During that time Mr. Evans had been working for the Nation under Huntington Construction Inc., and Western Pacific Construction, Inc., since 1989 under the farm management of Mr. Householder. The management of the Nation farm's realized that the Nation was going to lose, or had lost, the 23.4 and 7.5 millions. The Shuck Toak farm was not going to be completed timely. No work had been started on Shuck Toak and the time mandated for completion had already expired by three years.

The 23.4 and 7.5 millions expired in 1992 and was lost to the Nation. (Ultimately this was one of the reasons that Mr. Householder was terminated and Mr. Evans replaced him as the Nations farm manager)

In late 1995 Tribal Chairman Sylvester Listo and Kenneth Williams, the Chairman of the Farm Management Board approached Wayne Evans and requested Mr. Evans to reenergize the 23.4 and 7.5 million to build the Shuck Toak farm.

4

Mr. Evans purchased a video camera from Circuit City. (See Bank of American Check no. 1189, dated August 10, 1995, in the sum of $1,796.46 payable to Circuit City for a video camera.) Attached hereto is Appendix Exhibit 5 the video that was produced by Mr. Evans and presented to the Board of Reclamation in Phoenix, Arizona. Mr. Evans was successful in obtaining the reinstatement of the 23.4 and 7.5 million to create the Shuck Toak farm for the Nation.

In addition the damage repair to the other farms Mr. Evans was successful in having FEMA raise their participation from $495,000.00 to 5.7 million dollars in damage repair. See Appendix Exhibit 6.

Appointed counsel explained to the court the history of the relationship between Evans and the tribe. See Appendix Exhibit 1, Pages 23-31. Appointed defense counsel brought in the statement and letter, from Michael K. Stewart. (which at the time was part of the court file) The Federal Emergency Management Agency (FEMA) representative that was responsible for supervising and making the agency reports regarding the work covered by the grants from FEMA. The documents relating to the FEMA project are included in the case file which this Court is requested to take judicial notice and included in this pleading as Appendix exhibit 2, Letter dated August 2, 2002 and Narrative of Mr. Michael K. Steward, Appendix exhibit 3. All the above documents were, and are, available to

5

the prosecution, and known by the defense counsel at the time of the entry of the guilty plea.

Appendix Exhibit 2 clearly substantiates that the FEMA project, the project that is the subject of the criminal charges was completed prior to August 22, 1995, the date that Mr. Evans became the manager, by contract. Wherein Mr. Evans is charged with a "conflict of interest".

Appointed defense counsel never should have allowed Mr. Evans to plead guilty to the charge of "misappropriation of funds from an Indian Tribal organization (Title 18, U.S. Code, § 1163" without advising the Court that a valid defense existed to the charge.

What must be remembered is that after Mr. Evans obtained reinstatement of the thirty plus millions of dollars lost by the previous manager (Householder) from the Department of Interior for failing to complete projects covered by such millions. Appendix Exhibit 1, page 29-30  In addition Mr. Evans had a substantial bonus owed to him from the tribe for profit he created from his management of the farms for the tribe.  See Respondents Trial Exhibit 4-R

Edward B. Manuel testified against Mr. Evans at such sentencing. Mr. Manuel had nothing to do with the farm operation prior to his ascension to Tribal Chairman.  Knew nothing about what Mr. Evans had completed for

6

the nation. Had nothing good to say about Mr. Evans. What is missing from such testimony is that there would have been no contract with Mr. Evans if he had not obtained the thirty plus millions for the tribe to rebuild the farms that had been destroyed by the flood and mismanagement of the previous manager.

Mr. Manuel was not involved in the farming operation of the Tohono O'Dham farmlands prior to his ascension to Chief of counsel. Mr. Manuel was not privy to the discussion when Mr. Evans was representing Huntington Construction, Inc. and Western Pacific Construction, Inc., early in the 90's when equipment was furnished to the Nation.

The Nation Farm Board consisted of a slate of different people prior to July 1995 that knew and was familiar with Mr. Evans, Huntington Construction, Inc., and Western Pacific Construction, Inc. all known to be owned, or controlled and operated by Mr. Evans.

Mr. Evans single mistake was not to make sure the new Farm Board of the Nation was aware of his involvement with Huntington Construction, Inc., and Western Pacific Construction, Inc.

# B

## "filing a false income tax return (Title 26, U.S. Code § 7206 (1)"

The defense of this charge is even more glaring. Appointed Defense counsel stated to the criminal trial court (Appendix Exhibit 1, pages 32 through 34) that

> "Obviously **his attorneys**, the ones he had before for the civil lawsuit, the ones he had in the interim, and the ones he discussed the case with, **had advised him not to file taxes** pending this whole procedure or **until this case was over or until the civil case was over. So he did not file tax returns at that point**." (our emphasis added)

It is axiomatic that "advice of counsel" is a valid defense. The representation to the trial court that she had investigated the matter and had corresponded with gives the defense credibility. Id. page 34.

This court is requested to take judicial notice of CASE No. CV-97-555-TUC-WDB. ***Tohono O'Dham Nation Vs. Wayne Evans, Et Al.*** See: ***Reyn's supra***

The settlement with the Tohono O'Dham Nation (hereinafter referred to as the "Nation") is a travesty against the defendant's in such lawsuit.

8

Mr. Evans had no control over the settlement of the lawsuit. The Voice Of God (VOG) ministry decided to get out of the lawsuit. The Eight hundred Twenty thousand    dollar donation was a gift to the organization. Without the gift they would be no worse off without it. The interest that was made during the period that they had the money was still a tidy sum for the organization. Once they gave the money to the Nation (The Plaintiff)  to get themselves out of the lawsuit they had no further responsibility to defend the suit. Lawyers fees would stop, and the organization would be clear of the lawsuit.

There is no question that Huntington Construction, Inc., had performed an extensive amount of work for the Nation. Far in excess of what Huntington was paid. Whether or not Mr. Evans eventually received the money. The work was performed.

A victim of circumstance Mr. Evans had no alternative to prohibit VOG from returning the Eight hundred Twenty thousand    dollars to the Nation. The result is:

1. The Nation received Eight hundred Twenty thousand dollars of work performed by Mr. Evans company. Free.

2. The Nation received Eight hundred Twenty thousand dollars in cash through VOG from Mr. Evans that was paid to the Nation.

9

Did the Nation pay the Eight hundred Twenty thousand dollars back to FEMA, as that was where it came from? Or did the Nation receive the Eight hundred Twenty thousand dollars as a windfall profit?

3. The Nation avoided paying Mr. Evans the bonus on the work reopening the Thirty million plus dollars from the Department of Interior by making charges for which they knew were false.

4. The Nation avoided paying Mr. Evans the bonus on the farm profit of the Nation which he was entitled to as Manager. ( See Appendix Exhibit 7. Letter from Seby & Associates, LTD., Certified Public Accountants, dated November 21, 1999, after the lawsuit commenced by Tohono O'Odham Nation v. Wayne Evans, et al.)

Mr. Michael Stewart, whom we have mentioned in the criminal case above submitted an Affidavit on December 14, 1998, for the defense counsel in the civil case discussed here. The Affidavit is attached hereto as Appendix Exhibit 4.

Clearly Mr. Stewart was well aware that Huntington Construction, Inc., and Western Pacific Construction, Inc., were entities that Wayne Evans owned or controlled.

It must be noted that Huntington Construction, Inc., and Western Pacific Construction, Inc. controlled no pricing. The sum of monies to be paid by FEMA to contractors and the Nation was controlled entirely by FEMA Cost Code Index. The amount of work was controlled entirely by FEMA thereby FEMA controlled the sum and the amount of all work on the projects.

As stated above, for the reason that the tax court judge placed extreme credibility with the criminal conviction, and the settlement of the civil case, it is necessary for this court to view that reliance de novo.

The foregoing is related, including the Appendix I, for the benefit of this Court to determine the incomplete basis that the trial court engaged in relying upon an incomplete record provided by the Respondent to find for the Respondent.

The Petitioner provided most, if not all, the above documents to the trial court in the pre-trial memorandum of the Petitioner and the trial court returned all the documents refusing to consider such documents.

The **incomplete records** reinforce the argument of the Petitioner that **the returns** were **not** filed **with fraudulent intent** to evade tax. Fraud cannot be imputed or presumed; rather, it must be established by independent evidence. ***Kemp v. Comm's T.C. Memo. 2004-153***, (***citing Beaver v. Comm'r***, **55 T.C. 85, 92 (1970)**

# POINT II

**The trial court committed reversible error in finding for the Respondent when the Respondent failed to produce witnesses to the computation of any tax and penalty assessed against the Petitioners. While prohibiting the Petitioner to present a profit and loss statement prepared within close proximity to trial by Mr. Hamilton. Thereby precluding any penalty under section 6663.**

The trial court committed reversible error in finding for the Commissioner when the record clearly reflects otherwise. The Commissioner's Opening Brief is conclusory, argumentative, undocumented, and contrary to the testimony presented to the trial court.

The Commissioner failed to adequately establish that Petitioners under stated their income, intentionally, substantially, or otherwise. Generally, the Commissioner's deficiency determination is presumed to be correct, and the burden of proof with respect to refuting an assessment of unreported income is on the taxpayer; however, this presumption is rebutted where it is shown that the Government has failed to provide some evidentiary foundation for such assessment. ***Paccar v. Comm'r***, **849 F.2d 393, 400 (9th Cir. 1979).**

The evidence presented by the Commissioner at trial by the respondent counsel regarding the allegation of unreported income was and remains unsubstantiated. The Respondent witness, Revenue Agent Matthew Ennen

testified that he had not prepared (TR 62, Line 8-9) nor even seen the list of disallowed business expenses used by the Commissioner at trial. (TR 62, Line 22-24;TR 63, Line 2-8)

This issue is preserved as the Petitioner objected to the testimony of Revenue Agent Matthew Ennen (TR 54, Line 24; TR 55, 56, Line 1-7)  Thereafter at TR 57, Line 23 – TR 58, Line 1, Mr. Evans moved for dismissal of the case, (TR 64, Line 2-4) after the "Government rests"  (TR 63, Line 21).

The document attempted to be introduced is a document totally prepared by counsel for the Respondent and included in her Pre-trial Memorandum. TR 61, Line 8-11.  No testimony was permitted by anyone regarding the introduction of the document supposedly used to determine the deficiency.   The trial court precluded any cross examination of trial counsel for the Respondent such trial counsel having created the document. TR 61, Line 8-11.  If the trial counsel was going to be a witness she should have had another counsel representing the Respondent.

Where an issue exists as to whether a taxpayer is guilty of fraud with intent to evade tax, the burden of proof falls upon the Commissioner and must be established by clear and convincing evidence. I.R.C. § 7454 (a); T.C. Rule 142 (b). The following is required to meet the burden by the Commissioner:   1) the

13

Commissioner shows that an underpayment in tax exists; and 2) "proves conduct intended to conceal, mislead, or otherwise prevent *the collection of taxes."* ***Parks v. Comm'r***, **94 T.C. 654, 661** (1990) (emphasis added). The evidence must show that a "tax evasion motive" at least played a role in taxpayer's conduct. ***Recklitis v. Comm't***, **91 T.C. 874, 909-910 (1988).** Clearly advice of counsel does not fall under a "tax evasion motive" or raise to a "badge of fraud".

In the instant case the "badges of fraud" are not presented by credible evidence. Not one witness presented by the Respondent could testify to any of the "badges of fraud". The Olsen's couldn't remember anything credible. The Olsen's couldn't remember when, or if, Wayne Evans took control, ownership, or purchased Huntington Construction Inc. TR 39-41.

Douglas Hamilton testified that he had prepared a profit and loss statement for Huntington Construction, Inc. for the years of 1995, and 1996. TR 48, Line 16-20.

The trial court denied the use of such Profit and Loss Statement at trial as being information that had not been provided timely to the Respondent. TR. 49, Line 2 -17. Mr. Evans attempted to explain to the trial court that all the information and documents from which the Profit and Loss statement is produced had been previously provided to the counsel for Respondent. TR 50, Line 24-25. It

is abundantly obvious that the Profit and Loss Statement was predicated upon all the information that the Respondent counsel already had in her possession as a result of the alleged Deficiency Notice and subsequent investigation by the internal revenue agents. The Respondent had a copy of every single check written during 1994, 1995 and 1996 and every deposit. They had copies of every single check written during 1995, and 1996 from Chase Bank and Bank of America. On the accounts of Huntington Construction, Inc. and Western Pacific Inc. The complaint, by the Court, that the Respondent did not have the information was an abuse of discretion and showed prejudice by the trial court, one of several times. See TR 49, Line 12-17, and 22, through page 51, Line 22.

As a result Mr. Hamilton was unable to testify to anything further. Even though Mr. Hamilton explained that the Profit and Loss Statement was produced within the previous two (2) weeks of the trial. TR 50, Line 2-7.

The Court is requested to take specific notice of whom objected to the testimony of Mr. Hamilton. It was not the counsel for Respondent. The Court interceded for the counsel of the Respondent and brought the objection on her own. TR 48, Line 16 through TR 49, Line 25. While it is without cavil that the trial judge controls the admission of testimony and evidence. In the instant case, under the circumstances, the intercession by the trial court, is totally improper, without an objection by counsel for Respondent.

15

We must examine the decision by the trial court at the time denying the use of a document (Profit and Loss Statement of Huntington Construction Inc.) that was: **a recap of documents** in the possession of the Respondent's counsel's agents for several months or even years, TR 49, Line 18 **a recap of documents prepared by a tax expert witness of the Petitioner** (within the previous two weeks of trial TR 50, Line 7) , **the witness prepared to testify regarding the document and be cross-examined by the Respondent,**; and the **trial court precluding such testimony and the entry of such document!** VERSUS: a document **prepared by trial counsel for the Respondent, unable to be cross examined, and entered by the trial court,** (Emphasis added)

## Notice of Deficiency

(The Notice of Deficiency income and allowed deductions completely differed from the Pre-Trial Memorandum of the Respondent (CR 22)

The United States Constitution provides in Article VI:

> ". . . and be informed of the nature and cause of the accusation; to be confronted with the witnesses against him. . ."

16

With the discrepancies in the Notice of Deficiency and the discrepancies in the Respondents Pre Trial Memorandum the Evans' had not a clue as to what the actual charge is for which they were at trial.

Mr. Evans stated to the Court that the Notice of Deficiency was in error. TR 98, Line 16-17. The Court responded "No. You're in error." TR 98, Line 18.

What do we know about the computation of the alleged tax delineated by the Notice of Deficiency?

We know that the agent started out with an income for 1996 of:

$1, 034,082.00 listed as "other income"

We know that the Nation received $820,000.00 returned by the settlement of CV-97-555-TUC-WDB. ***Tohono O'Dham Nation Vs. Wayne Evans, Et Al..***

We know that the IRS Agent determined in the Notice of Deficiency that the Evans' were entitled to  deduction of $515,167.00.

The $1,034,082.00 minus the $820,000.00 returned monies deducted from the amount of income determined by the IRS Agent working the Notice of Deficiency leaves a balance of income of $214, 082.00.

We know that the $214,082.00 less the allowed deductions determined by the IRS Agent working the Notice of Deficiency leaves a loss of <$301,085.00> for the period of 1996.

Where is the fraud? Where is the under payment of taxes? Where is the deficiency?

The Agent working the Notice of Deficiency did not allow any credit for the $820,000.00 that was no longer income, but a direct expense. **The Agent** working the Notice of Deficiency was working the numbers and **created the Notice of Deficiency in July of 2007, approximately 7 years after the $820,000.00 was known by the IRS to have been returned to the Nation. Not income to the Evans'.**

We know that Check no. 1219, drawn on the Bank of America, payable to Tony Chico was disallowed as a business expense by the Commissioner while other checks to Tony Chico made out the exact same way were allowed by the Commissioner as business expense for labor. (TR. 88: trial exhibit 11-R, pp 248-249) (Also see Tony Chico in the video, Appendix Exhibit 5 to this Document) The arbitrary decision is one of many without any foundation by the Respondent.

The clerks record shows that Respondents Exhibit marked 20-R, pp. 101-135 are duplicates of, and deposit slips for, the checks set out      in Exhibit 10-R

pp.77-98. Clearly not credible evidence but unable to be cross-examined by the Petitioner.

The trial record shows (CR 22) Respondents Pre Trial Memorandum provides credit as an expense to Huntington Construction, Inc., in the amount of $5,452.00 made out to Cash, dated December 16, 1995, check no. 1439, Bank of America account, without any support documents. Clearly inconsistent with Respondents Counsel preparing the document this court entered as evidence during trial.

The trial record shows (CR 22) Respondents Pre Trial Memorandum provides credit as an expense to Huntington Construction, Inc., in the amount of $8,166.00 made out to Bank of America, dated December 30, 1995, check no 1464, Bank of America account, without any support documents. Clearly inconsistent with Respondents Counsel preparing the document this court entered as evidence during trial.

It appears at first blush that counsel for Respondent randomly picked checks that she would grant credit for expense without any foundation while disallowing others in an effort to match the figures in the previous Notice of Deficiency. The Petitioner being unable to cross examine such ridiculous accounting was unable to

challenge such accounting. However, the tax court judge admitted such documents without question.

Respondents Pre Trial Memorandum (CR 22, page 9) discloses that total income in the Notice of Deficiency is $429,287.00. Respondents Pre Trial Memorandum (CR 22, page 13) disallows $441,491.26 expenses by Huntington Construction, Inc. The glaring discrepancy is that Huntington Construction, Inc., was disallowed $12,204.26 by the Respondents Pre Trial Memorandum, more than the $429,287.00 determined income by the same Respondents.

We again find prejudice on the part of the tax court judge. At TR 118, the tax court judge makes the following prejudicial statements on the record:

> Line 4 Court: " Okay. Then the case will be submitted. I'd like for Respondent to file an opening brief - - how long do you want, Ms. Hansen?
>
> Ms. Hansen: Forty-five days?
>
> Court: How many?
>
> Ms. Hansen: Forty-five days?
>
> Court: Well, that gives you 15 days after you get the transcript.
>
> Ms. Hansen: Sixty days, please.
>
> Court: Take 75 and **organize it well**. That's the usual amount, and this is an extensive record. And **I want a well-organized brief that ties very carefully to the persuasive exhibits and the testimony**.
>
> (our emphasis added)

20

If the usual amount was 75days, why didn't the tax court judge just say, you have 75 days to file the brief?

## Point III

## The Commissioner failed to prove fraud on the part of the Evans.

Pursuant to I.R.C. §7454(a), and Tax Court Rule 142(b), the Respondent bears the burden of proof by clear and convincing evidence. *Herbrank v. Commissioner*, **81 T.C. 640, 542 (1983)**. In order to sustain his heavy burden, the Commissioner must provide more than just a Revenue Agent's report and conclusory statements in support thereof. See. *Aston v. Comm'r*, **T.C. Memo. 2003-128**. The Commissioner fell far short of the bar set forth in **Aston**, Id., by failing to call as a witness the Revenue Agent who interviewed Petitioners and determined which expenses to disallow. In the instant case the agent testifying knew nothing about the Notice of Deficiency, ante.

Petitioners have affirmatively demonstrated that Evans did not file his 1995 and 1996 returns with the intention to evade tax that he believed to be owed. Admittedly, the taxpayers filed their tax returns late and used the bank account for Huntington Construction for both personal and business expenses. However. when Petitioners filed their 1995 and 1996 tax returns, they gave to the preparer the W-2

21

income of the husband, income from the Huntington Account which they believed personal in nature and, therefore, taxable to them, and information relating to the operations of their sole proprietorship. They did not claim a sizeable charitable deduction to which they were entitled. The Petitioners may have been naive and perhaps negligent in the handling of their business and tax matter, but Evans' actions were not fraudulent with the intent to evade tax when the returns were filed in January of 2001.

It must be remembered that the Evans were relying upon the "advice of counsel not to file the taxes" timely while litigation was pending. (See Appendix Exhibit 1, pp. 32-34, representations by defense counsel in the criminal action.)

Evans' actions were not fraudulent with the intent to evade tax when the returns were filed in January of 2001.

The Respondent has to rely on Evans' conviction under section 7206(1), which itself does not establish the critical elements of this case and particularly does not establish Mr. Evans intent. However, the tax court relied extensively upon that very element contrary to what the law is. In the absence of other evidence of fraud, the addition of tax under section 6663 cannot be applied, and the assessment of any income tax deficiency is barred for 1995 and 1996.

This Court is requested to take special notice that Mr. Evans did not plead guilty to filing a "fraudulent tax return". The charge for which he pled guilty was "filing a false return".


## POINT IV

## The tax court required the Petitioner's both, Mr. and Mrs. Evans, to be witnesses against themselves contrary to the Fifth Amendment of the United States Constitution

A fundamental principal founded in the United States Constitution is found in the Fifth Amendment.

> " . . . nor be deprived of life, liberty, or property, without due process of law; . . ."

It is without question that the tax court ignored the defenses of the Petitioners. The Respondent conducted a "show-up" during the trial. Without any foundation. So blatant was the deficiency of the Respondent. That the tax court judge, made the following prejudicial statement on the record at TR 68, Line 6 -10:

> " That - - frankly, I was kind of disappointed in what they presented."

23

(The tax court is referring to what the Respondent counsel presented during her case in chief.)

Why is the tax court judge "disappointed"? Is the judge disappointed because the counsel for the Respondent didn't present **ANY** credible evidence?

The tax court went on to say at TR 68, Line 9-11:

> "But I think the case should be settled. I can't force that. I'll listen to it if it isn't settled."

Regarding the additional prejudice that the tax court expressed against Mrs. Evans the court stated the following on the record, at TR 66, Lines 16-21, relative to Mrs. Evans testimony.

> "The Court: All right. And I hope Mrs. Evans understands what she has to explain. Because it's all laid out in Respondent's pretrial memorandum. And she can't keep saying she doesn't know anything, because she has the burden of proving what Respondent says she has to prove."

What did the tax court mean, ". . . she has the burden of proving what the Respondent says she has to prove"? Clearly the Respondent had not proved anything. Madelyn Evans did not agree to the "stipulations". Mrs. Evans did not agree to anything. She claimed to have no knowledge of Huntington Construction, Inc. She certainly didn't.

Madelyn Evans was in charge of the horses, she took care of the Oro Valley Stables, which was at their home.   See TR 107, Line 8 through TR 108, Line 20.

The tax court judge required Mr. and   Mrs. Evans to testify against allegations that were misstated, unfounded, and now determined to be incorrect as to sums and circumstances.  The Respondent provided no testimony that supported any of the claims in the pre-trial memorandum she filed with the Court, but relied upon incomplete and misstated documents of case files that she knew were probably misstated and incomplete.

## CONCLUSION

This tax case stems from the criminal action and civil action previously filed by the government, (TR 69, Line 19 through TR 71, Line 6)  and supported by the Nation that had a great motive to participate against Mr. Evans whom had a great sum of money owed to him for his work with the Bureau of Reclamation and reinstating the grant and non reimbursable loan of nearly 30 million of dollars which the Nation would never have obtained.

The use of the prior cases to support the tax fraud actions of this instant case falls short even when the other cases are considered because the counsel for the

Respondent failed to prove the elements of fraud, and the intent to commit such fraud. Both on the part of Mr. Evans and Mrs. Evans.

To punish Mr. and Mrs. Evans for following the "advice of counsel" in the filing of tax forms, is such an aberration that such finding defies American principles of justice.

Would the Respondent counsel been successful in prosecuting this action without the help and assistance of the tax court judge is doubtful

The case should be dismissed, or in the alternative be remanded back to the trial court for a new trial.

Respectfully submitted,

Wayne C. Evans, *pro se*

P.O. Box 925

Jeffersonville, IN. 47131

520-247-6227

Madelyn M. Evans, *pro se*

P.O. Box 925

26

Jeffersonville, IN. 47131

520-247-6227

# CERTIFICATE OF COMPLIANCE

## PURSUANT TO NLINTH CIRCUIT RULES 28-4, 29-2(C) AND 32-2

We hereby certify:

This brief complies with the length limits set forth at Ninth Circuit Rule 3204.    The brief's type size and type face comply with Fed.R.App.P.32(a)(5) and (6)

DATED: 3-15-2011

Wayne C. Evans

DATED: 3-15-2011

Madelyn F. Evans

28

# CERTIFICATE OF COMPLIANCE WITH
# TYPE-VOLUMN LIMITATION, TYPE FACE REQUIREMENTS,
# AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32 (a)(7)(B)  because: this brief contains 5, 2247 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:  This brief has been prepared in a proportionally spaced type face using Microsoft Word, font 14, Times New Roman .

_____
Wayne Evans, pro se

_____
Madelyn Evans, pro se

# STATEMENT OF RELATED CASES

Other cases that are related to this case are the following:


***United States Vs. Wayne C. Evans***, CR-99-1267-TUC-FRZ.


and


***Tohono O'Dham Nation Vs. Wayne Evans, Et al.,*** CV-97-555-TUC-WDB.

30

# **CERTIFICATE OF SERVICE**

I hereby certify that the on March 15, 2011, We have mailed to the Clerk of the Ninth Circuit Court of Appeals the original and three copies of the foregoing Appellant Brief, Excerpt of Record, Volume I, and Appendix One, and mailed first-class mail, postage prepaid, to: Honorable Molly C. Dwyer, Clerk of the Court, Office of the Clerk, United States Court of Appeals for the Ninth Circuit, P.O. Box 193939, San Francisco, California, 94119-3939, and a true and correct copy to: Honorable Patricia M. Bowman, Attorney Appellate Section, U.S. Department of Justice, Tax Division, P.O. Box 502, Washington, D.C. 20044. Counsel for the Respondent.

_____  
Wayne C. Evans

Appellant, pro se

_____  
Madelyn F. Evans

Appellant, pro se